UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:13CR00065 ERW-1 |
| ) | |
| ANTONIO MAURICE HOLMES, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Thomas C. Mummert [ECF No. 30], recommending the denial of Defendant Antonio Maurice Holmes' ("Defendant") Motion to Suppress Evidence and Statements [ECF No. 23].

On February 20, 2013, the Government filed a one-count indictment, alleging Defendant, having been convicted previously of a crime punishable by a term of imprisonment exceeding one year under the laws of the State of Missouri, violated 18 U.S.C. § 922(g)(1), by knowingly possessing a firearm that had previously traveled in interstate or foreign commerce [ECF No. 1]. On April 15, Defendant filed his Motion to Suppress Evidence and Statements, moving the Court to suppress any and all evidence seized by law enforcement officers and any and all statements made by Defendant to law enforcement officers [ECF No. 23].

On April 22, 2013, the Magistrate conducted an evidentiary hearing to receive evidence and testimony on Defendant's Motion to Suppress [ECF No. 26]. St. Louis Metropolitan Police Detectives Marc Wasem and Michael Minor testified during the hearing, and Defendant's signed

"Warning and Waiver" form and written statement was received as evidence [ECF Nos. 27, 28, 31].

In his Memorandum, and Report and Recommendation, the Magistrate Judge concluded that Defendant's Motion to Suppress Evidence should be denied, because: 1) Defendant was validly arrested on seven pending bench warrants; 2) a confidential informant's tip was sufficiently corroborated by other factors to serve as the basis for probable cause to arrest Defendant; and 3) the police had probable cause to search Defendant's van after Defendant advised Detective Wasem that he had a gun in the van, and Detective Wasem observed the butt of a handgun and a gun clip in plain view through the van's window [ECF Nos. 29, 30]. The Magistrate Judge further concluded that Defendant's Motion to Suppress Statements should be denied, because Defendant's voluntary verbal and written statements were made after Defendant had been provided warnings in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966), and had voluntarily, knowingly, and intelligently waived his rights following his arrest on the outstanding bench warrants. Accordingly, the Magistrate Judge recommended that Defendant's Motion to Suppress be denied.

The Defendant timely filed Objections to the Report and Recommendation by the Magistrate Judge [ECF No. 32]. In his Objections, Defendant objects generally to the findings of fact and conclusions of law, and to the conclusion that his Motion to Suppress be denied. Defendant also objects specifically to the following conclusions by the Magistrate Judge: 1) that the confidential informant's information was reliable, and that the police officers corroborated this information, such that the information formed the basis for probable cause to arrest Defendant; 2) that the firearm was in plain view, and therefore, the officer could seize the firearm from Defendant's van without a warrant; 3) that the police had probable cause to search the van

2

after Defendant stated he had a firearm in the van; and 4) that Defendant's statements made to the police officers in a police vehicle and at the police station were voluntarily, knowingly and intelligently made.

The Court conducts a *de novo* review of those portions of a report or specified proposed findings to which timely objection is made. 28 U.S.C. § 636(b); *see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). As an initial matter, the Court notes that Defendant has not made any specific objection to the Magistrate Judge's findings of fact; however, Defendant, somewhat equivocally, asserts in his Motion that the officers did not read and explain to him his *Miranda* rights, and he objects to the Magistrate Judge's conclusion that his statements were voluntarily, knowingly and intelligently made. The Court considers Defendant's objections to the Magistrate Judge's conclusions and recommendation.

## I. FINDINGS OF FACT

On September 4, 2012, a reliable confidential informant advised Detective Wasem that Defendant was armed, and selling compact discs (CD's) from his white utility van near Natural Bridge and Grand outside of a t-shirt shop. Detective Wasem had been using information from this confidential informant for five years and the informant had provided reliable information regarding the whereabouts of fugitives and in drugs and gun cases. Detective Joseph Kuster, Wasem's partner, had been receiving this type of reliable information from the confidential informant for the past ten years.

Detective Wasem performed a police computer check of Defendant and obtained a photograph of Defendant. The confidential informant confirmed that the man in the photograph was, in fact, the person with a weapon, who was selling CD's near the t-shirt shop. The computer check revealed that Defendant drove a white Ford utility van with the license plate

3

number HG7 LIT; that Defendant was a member of a violent street gang; that Defendant had prior felony convictions, for which he had served time in jail; and that Defendant was wanted in multiple local jurisdictions for failure to appear, and on bench warrants.

On September 17, 2012, Detective Wasem again talked to the confidential informant, who advised Detective Wasem that Defendant was at the Natural Bridge and Grand location, armed and selling CD's. Detective Wasem reviewed Defendant's criminal record, and found that Defendant was wanted in several local jurisdictions: for failure to appear in the City of Beverly Hills, Missouri; on a bench warrant for assault in Vinita Park, Missouri; for failure to appear in Hazelwood, Missouri; for failure to appear in Maryland Heights, Missouri; and on two bench warrants in St. Louis City, Missouri.

Several plain clothes police officers in unmarked cars set up surveillance near the t-shirt shop, in the area of Natural Bridge and Taylor streets. Defendant's van was observed, and the vehicle's license plate number confirmed that the van was registered to Defendant. Defendant exited the t-shirt shop, entered the van, and drove to a convenience store. Defendant then picked up a female passenger at the corner of Finney and Grand streets, and drove to a ZX gas station, where he exited the van and walked toward the station's entrance.

Defendant was arrested before he entered the station. Defendant was advised that he was arrested pursuant to the outstanding bench warrants, and he was taken to an undercover police vehicle. There, Detective Wasem read the *Miranda* warnings to Defendant. Defendant understood the warnings. There is no evidence of threats, coercion, force or promises made to Defendant to secure his cooperation. Defendant was coherent. Defendant voluntarily stated that there was a gun in his van, under a jacket between the front seats.

Detective Wasem looked through the van window, and observed, in plain view between the seats, the butt of the handgun protruding from under a jacket. He also observed a gun clip in the console of the van. He photographed the items inside of the van, and seized the gun and the gun clip. The gun was loaded, and the clip was filled with fifteen rounds of ammunition. Defendant was then arrested for being a felon in possession of a weapon.

Detective Minor was one of the officers present at the scene of Defendant's arrest. Detective Minor transported Defendant to the St. Louis Justice Center, where Defendant voluntarily agreed to make a written statement. After the *Miranda* warnings were read to him, Defendant voluntarily made a written statement at 3:45 p.m. [ECF No. 24-1]. Defendant initialed each warning on the form, indicating that he understood the warnings. In his written statement, Defendant said: "I had the gun for my and my families [sic] protection only – I was recieving [sic] threatening text msgs. and phone calls about killing me and my family, my new daughter and her mother since my little brothers gettin' [sic] killed in January – wasn't intending to do anything with it but protect me and my family. I bought it off of the streets to protect my family only."

## II. DISCUSSION

In his motion, Defendant asks the Court to suppress as evidence any and all evidence seized by law enforcement officers and any and all statements made by Defendant to law enforcement officers. Defendant argues that: 1) the police officers illegally searched his van and located a firearm following his arrest on outstanding warrants; 2) the officers did not read and explain to him his *Miranda* rights; and 3) any statements made by Defendant subsequent to the discovery of the weapon were the fruit of the poisonous tree, and should therefore be suppressed.

Defendant asserts that the search of his van was not incident to arrest, because he was handcuffed in the patrol car when the officers searched the vehicle. He contends that the evidence preservation and officer safety exceptions to the warrant requirement also do not apply to the search, because: the officers did not see any evidence of a crime being committed during their surveillance; there was no reason to believe the vehicle contained any evidence of a crime, as he was arrested on a warrant for a traffic violation; and he was unable to reach the van or any compartment of the van.

In its Response, the Government states that Defendant was arrested pursuant to valid arrest warrants [ECF No. 24]. The Government argues that the seized firearm is admissible as evidence under the automobile exception to the Fourth Amendment, because the detectives had probable cause to search the van based on: the information from the reliable confidential informant, the computer search, and the detectives' observations at the t-shirt shop location; their awareness that Defendant had a previous felony conviction; and the statements Defendant made upon his arrest, acknowledging his possession of a firearm and its location in his vehicle.

'The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search." *Steagald v. United States*, 451 U.S. 204, 212 (1981). Arrest warrants are issued by magistrates upon a showing that probable cause exists to believe that an individual has committed an offense. *Id.* at 213. At the time of Defendant's arrest, Detective Wasem knew that Defendant was wanted under several bench warrants, which leaves little doubt as to the validity of Defendant's arrest. Detective Wasem had probable cause to arrest Defendant. *See United States v. West*, 517 F.2d 483, 485 (8th Cir. 1975). With no additional information, the question would then become what, beyond seizing Defendant, the bench warrants authorized the detectives to do. *See Steagald*, 451 U.S. at 213.

However, the circumstances here present additional facts relevant to the Court's suppression analysis.

A confidential informant -- who, for five years, had been providing Detective Wasem reliable information concerning drugs and gun cases, and regarding the whereabouts of fugitives -- advised Detective Wasem that Defendant was armed and selling CD's from his utility van near a t-shirt shop near Natural and Grand. Detective Wasem performed a police computer check of Defendant, and obtained a photograph of Defendant, which the confidential informant confirmed as being the individual selling CD's. The computer check also revealed the make and license number of Defendant's van, his membership in a violent street gang, his prior felony convictions, and multiple outstanding bench warrants for Defendant's arrest.

"An informant's tip sufficiently corroborated by other factors may serve as the basis for probable cause to arrest." *United States v. Morgan*, 997 F.2d 433, 436 (8th Cir. 1993). In this case, the confidential informant's tip was corroborated by the information acquired during Detective Wasem's computer search, and was further confirmed when the surveillance team found Defendant's van in the vicinity of the t-shirt store and observed Defendant exit the t-shirt store and enter his van – at the location described by the informant. Furthermore, the tip was significantly corroborated when Defendant voluntarily stated that there was a gun under a jacket between the seats of his van.

Taken as a whole, these facts established sufficient grounds to support a belief that Defendant not only was the subject of pending warrants for arrest, but also was a convicted felon in possession of a firearm. Because probable cause existed for Defendant's arrest and to believe that Defendant was carrying a weapon in his vehicle, the search of his van's interior was valid as a search incident to a lawful arrest. *Id.*; *see also Chambers v. Maroney*, 399 U.S. 42, 48, 51

(1970) (due to being readily moveable, automobiles may be searched without a warrant in circumstances that would not justify a warrantless search of a house or office, provided there is probable cause to believe a vehicle contains articles that officers are entitled to seize).

The impracticability, given the nature of a vehicle in transit, of securing a warrant in cases involving the transport of contraband makes an immediate intrusion necessary if law enforcement officials are to secure that which by law is subject to seizure. *United States v. Ross*, 456 U.S. 798, 806-07 (1982). "[A] search [of a vehicle] is not unreasonable if based on facts that would justify the issuance of a warrant even though a warrant has not actually been obtained." *Id.* at 809. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825. The Court finds that Defendant's van was validly searched and that the firearm was properly seized.

Defendant has specifically objected to the Magistrate Judge's conclusion that the firearm was in plain view and validly could be seized from Defendant's van without a warrant; therefore, the Government alternatively contends that the firearm is admissible under the plain view doctrine, because Detective Wasem observed the butt of a black semi-automatic pistol and a gun clip when he looked inside the van through the driver's window.

Under the plain view doctrine, law enforcement officers may make warrantless seizures of evidence when: 1) the officers have not violated the Fourth Amendment in arriving at the place from which the evidence can be plainly viewed; 2) the incriminating character of the object is immediately apparent; and 3) the officers have a lawful right of access to the object. *United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997).

Here, Detective Wasem did not violate the Fourth Amendment in arriving at Defendant's van, and the incriminating character of the pistol and gun clip were immediately apparent, as Detective Wasem had probable cause to associate the firearm with illegal activity. Thus, the seizure of the firearm was also justified under the plain view doctrine. The Court will deny Defendant's Motion to Suppress Evidence. *See Horton v. California*, 496 U.S. 128, 141-42 (1990 (the seizure of an object in plain view does not involve an intrusion on privacy and there is no need for an inadvertence limitation on seizures to condemn it).

Defendant claims that the officers did not read and explain his *Miranda* rights to him prior to his oral statements admitting possession of a firearm. However, Defendant also states that, "[e]ven if officers did read and explain to [him] his *Miranda* rights," his statements still should be suppressed under the fruit of the poisonous tree doctrine, because his statements were the result of the illegal search and seizure of the firearm.

*Miranda* prohibits the admission of statements given by a suspect during "custodial interrogation" without a prior warning. *Illinois v. Perkins*, 496 U.S. 292, 296 (1990). *Miranda*'s holding concludes that, in the context of "custodial interrogation," certain procedural safeguards, including informing defendants of their right to remain silent, are required to protect defendants against compulsory self-incrimination in violation of their Fifth and Fourteenth Amendment privileges. *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). "Custodial interrogation means 'questioning initiated by law enforcement officers after a person has been taken into custody . . ..'" *Perkins*, 496 U.S. at 296 (quoting *Miranda*, 384 U.S. at 444). "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Perkins*, 496 U.S. at 297 (quoting *Miranda*, 384 U.S. at 478).

9

The record shows that Defendant volunteered his oral statements, admitting to possession of a firearm, after he was placed under arrest for the active bench warrants. As an initial matter, the Court notes that, although Defendant was undisputedly in custody when he made his oral statement, it is questionable whether Defendant was interrogated by the detectives in violation of his right under *Miranda* to remain silent. *See Innis*, 446 U.S. at 301-03. Defendant does not allege that he was subjected to express questioning following his arrest, and the record does not establish that he was subjected to the functional equivalent of questioning. In his Motion to Suppress, Defendant merely states, "After [Defendant] was arrested and placed in the patrol vehicle, officers told [Defendant] that they were investigating his for possession of a firearm. [Defendant] made several oral statements to officers admitting possession of a firearm." "[T]he definition of interrogation can extend only to words or actions of the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Id.* at 302 (italics in original).

The record does not show that Defendant's statement regarding the firearm in his van was the product of words or actions on the part of the detectives that they should have known were reasonably likely to elicit an incriminating response. Thus, the Court finds that Defendant's oral statement was not given during a custodial interrogation.

Furthermore, the Court finds that the officers did read and explain to Defendant his *Miranda* rights, both in the police vehicle and at the police station. Significantly, the Court finds that Defendant was informed of his *Miranda* rights prior to his voluntary statement regarding possession of the firearm. The Court will deny Defendant's motion to suppress his oral statement regarding his possession of a firearm.

Defendant admits that officers read him his *Miranda* rights at the police station, and that he subsequently made a written statement admitting his possession of the firearm. He argues, nevertheless, that his written statement also should be suppressed under the fruit of the poisonous tree doctrine, as "[n]othing but the bare *Miranda* warnings intervened to break the direct taint between the unlawful search and seizure and the statement." In its Response, the Government contends that the verbal and written statements Defendant made to law enforcement officers after his lawful arrest are admissible because he voluntarily, knowingly, and intelligently waived his *Miranda* rights. The Court finds that Defendant's written statement was voluntarily made after Defendant was completely advised of, and had waived, his *Miranda* rights. The Court concludes Defendant's statement should not be suppressed.

The Court has already concluded that the search of Defendant's van was valid as a search incident to a lawful arrest, because, based on the totality of the circumstances, probable cause existed to arrest Defendant at the ZX gas station, and to believe that Defendant was carrying a weapon in his vehicle. The Court has likewise determined that the firearm was legally seized during the search. Thus, the Court concludes that Defendant's written statement, voluntarily made after officer read him his *Miranda* rights, should not be suppressed under fruit of the poisonous tree doctrine. The Court will deny Defendant's motion to suppress his written statement admitting his possession of the firearm.

### III. CONCLUSION

After de novo review, the Court has concluded that the Magistrate Judge properly determined Defendant's Motion to Suppress Evidence and Statements should be denied. As a result, Defendant's Motion to Suppress will be denied.

Accordingly,

11

**IT IS HEREBY ORDERED** that Defendant's Motion to Suppress Evidence and Statements [ECF No. 23] is **DENIED**.

Dated this 15th day of May, 2013.

/s/ John A. Ross
UNITED STATES DISTRICT JUDGE